# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **JENNIFER KIMBLER,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:16CV00047 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **KEVIN SPEAR, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Steven R. Minor, Elliott Lawson & Minor, Bristol, Virginia, for Plaintiff; Cameron S. Bell, Penn, Stuart & Eskridge, Abingdon, Virginia, and Ronald W. Cox, Jr., McCarthy Wilson LLP, Rockville, Maryland, for Defendants.*

In this diversity action under Virginia substantive law, the plaintiff, Jennifer Kimbler, asserts a claim for defamation per se against defendant Hannleb Physics, Inc. ("Hannleb") and its employee, defendant Kevin Spear. The defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. I previously deferred ruling on the Motion for Summary Judgment pending the completion of certain limited discovery. I now find that summary judgment is premature and, for that reason, will deny the defendants' Motion for Summary Judgment without prejudice.

I.

I recited certain undisputed facts in my previous Opinion. For the sake of simplicity, I reiterate those facts below:

> Plaintiff Jennifer Kimbler is a dosimetrist who, at the time of the events giving rise to this action, was employed by Mountain States Health Alliance ("MSHA") at its Johnston Memorial Hospital in Abingdon, Virginia. A dosimetrist is a member of a radiation oncology team. In her role, Kimbler worked as part of a team with a physicist from Hannleb, Michelle Schwer, and an oncologist, Dr. [Bernie] Tisdale.
>
> This action centers on an external audit conducted by defendant Kevin Spear in his capacity as an agent of defendant Hannleb. Hannleb is a medical physics and dosimetry company that provides certain services, including review services, to MSHA. The audit was conducted pursuant to a written Service Agreement between Hannleb and MSHA. In conducting the audit, Spear reviewed the charts of patients, including patients treated by Kimbler.
>
> In April 2016, Kimbler received a "Written Counselling/Correction Action Notice" from MSHA that referenced the audit. Kimbler subsequently resigned from her position with MSHA. Following Kimbler's resignation, Hannleb was asked to provide temporary dosimetry services for Johnston Memorial Hospital until a permanent replacement could be hired.
>
> In December 2016, Kimbler filed this lawsuit against Spear and Hannleb. Specifically, Kimbler alleges that the external audit conducted by Spear on behalf of Hannleb "contains false and defamatory statements about [her] professional ability." Compl. ¶ 11, ECF No. 1. She claims that the audit "falsely suggests that [she] purposefully mistreated patients," that its purpose was to "state or imply that [she] was guilty of unethical and unprofessional conduct and that her employment should be terminated," that the defendants published the audit "with actual knowledge that it was false or with reckless disregard of whether it was false or not," and that the audit

was "willfully designed to discredit [her] in her profession." *Id.* at ¶¶ 12, 16-17.

Op. & Order 2-3, Apr. 11, 2017, ECF No. 23 (footnotes omitted).

On February 23, 2017, the defendants filed a Motion for Summary Judgment. The defendants relied on three grounds: that they are entitled to statutory immunity under Virginia law; that they enjoy a qualified privilege in making the audit report; and that the audit "is not defamatory because it does not contain actionable statements." Mem. Supp. Summ. J. 5, ECF No. 8. Kimbler argued in opposition that summary judgment was premature and requested that this court permit her to conduct discovery of certain facts before ruling on the defendants' motion. The motion was fully briefed and orally argued on April 3, 2017. I granted Kimbler's request and deferred ruling on the motion pending the completion of limited discovery, namely, the production of the contracts between Hannleb and MSHA and the deposition by oral examination of defendant Spear as to matters relevant to the defenses of immunity and qualified privilege. Op. & Order 9, ECF No. 23.

Counsel for Kimbler conducted the oral deposition of defendant Spear on April 27, 2017. Kimbler subsequently submitted a supplemental response to her opposition to the Motion for Summary Judgment. In her supplemental response, she argues that the "[immunity] statute does not apply because the audit of [her] work was not prepared and published in the performance of the Defendants' duties

. . . of the kind to which the immunity defense applies," that the statements were not protected by a qualified privilege because they were made with common-law malice, and that there is a "genuine dispute of material fact as to whether the Defendants acted with reckless disregard for the truth."  Suppl. Mem. Opp'n Summ. J.13, 15, 17, ECF No. 31.  She also reiterates her argument that summary judgment would be premature at this point and provides a specific list of the documents she would seek to have produced and the questions she would seek to have answered in the course of full discovery.

In response, the defendants argue that an immunity defense does apply because the audit of Kimbler's work was "performed . . . and provided . . . to [MSHA] pursuant to the Service Agreement" and that Kimbler has "failed to generate a genuine issue of material fact as to whether Defendants acted with a reckless disregard for the truth."  Reply to Pl.'s Suppl. Mem. Opp'n Summ. J. 2, 5, ECF No. 33.  They assert that Kimbler's "mere beliefs as to the Defendants' motives" are "speculation" and are "insufficient to create a genuine issue of material fact sufficient to overcome summary judgment."  *Id.* at 9-10.  They also argue that Kimbler "has failed to set forth any basis for the conclusion that any additional discovery would lead to facts that would support her speculative theories."  *Id.* at 11.

II.

"In general, summary judgment should only be granted 'after adequate time for discovery.'" *McCray v. Md. Dep't of Transp.,* 741 F.3d 480, 483 (4th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, where a nonmovant shows that she lacks "facts essential to justify [her] opposition" to summary judgment, the court may defer or deny the motion or "allow time to . . . take discovery." Fed. R. Civ. P. 56(d). "A Rule 56(d) motion must be granted 'where the nonmoving party has not had the opportunity to discover information that is essential to [her] opposition.'" *McCray*, 741 F.3d at 483-84 (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). "[S]uch motions are 'broadly favored and should be liberally granted' in order to protect non-moving parties from premature summary judgment motions." *Id.* at 484 (quoting *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013)).

III.

After reviewing the transcript of defendant Spear's deposition, I find that granting summary judgment at this point in the case would be premature.

Summary judgment is generally appropriate only after adequate time for discovery, and this case is no exception.[1]

In order to succeed on a Rule 56(d) motion, "non-movants must put the district court on notice as to which specific facts are yet to be discovered." *McCray*, 741 F.3d at 484. Kimbler has done so by providing a list of the documents she would seek to have produced and the questions she would seek to have answered. See s Suppl. Mem. Opp'n Summ. J. 21, ECF No. 31. It is true that "non-movants do not qualify for Rule 56(d) protection where they had the opportunity to discover evidence but chose not to," *McCray*, 741 F.3d at 484, but this scenario is not applicable here. Because the defendants moved for summary judgment prior to any discovery, and because Kimbler made her Rule 56(d) motion immediately following, Kimbler has not foregone any opportunity to discover evidence. In addition, Kimbler seeks to demonstrate that the defendants acted maliciously in order to overcome the immunity and qualified privilege defenses, and "summary judgment prior to discovery can be particularly inappropriate when a case involves complex factual questions about intent and motive." *Harrods Ltd.*, 302 F.3d at 247.

---

[1] Certain portions of the record in this case have been filed under seal. Kimbler has requested that the seal be lifted, which the defendants have opposed, ECF No. 40. Because I did not find it necessary to consider this information in ruling on the Motion for Summary Judgment now before me, I deny Kimbler's request. The document, ECF No. 39, will remain sealed until further order of the court and continue to be held confidential under the protective order previously entered. ECF No. 28.

Furthermore, after reviewing the limited discovery already conducted, I cannot find that the defendants have carried their burden of showing that there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The viability of the defendants' defenses of statutory immunity and qualified privilege turn on the question of whether they acted with bad faith or malice in publishing the audit. Kimbler asserts that there is a genuine dispute as to whether they did so. I agree.

The defendants are not entitled to statutory immunity if the statements contained in the audit were "made in bad faith or with malicious intent." Va. Code Ann. § 8.01-581.16. Similarly, any qualified privilege attached to the statements was "lost or abused" if the statements were made with common law malice. *Cashion v. Smith*, 749 S.E.2d 526, 532 (Va. 2013). In the context of qualified privilege, "malice" can mean that "the statements were made with knowledge that they were false or with reckless disregard for their truth," that they were "communicated to third parties who ha[d] no duty or interest in the subject matter," that they were "motivated by personal spite or ill will," that they "included strong or violent language disproportionate to the occasion," or simply that they were "not made in good faith." *Id.* at 533 (internal quotations marks and citations omitted).

Based on the pleadings and limited discovery, I cannot conclude, at this point, that there is no genuine dispute as to whether the defendants acted with malice or in bad faith. The circumstances surrounding the initiation of the audit, as

well as Spear's methodology in conducting the audit, raise questions as to the defendants' motivation. For example, one of Hannleb's express obligations under the Service Agreement is to "[p]articipate in the development and operation of appropriate performance improvement and ongoing peer review procedures in order to meet JCAHO standards." Serv. Agreement 2, ¶ (o), ECF No. 31-2. Spear testified that, pursuant to this paragraph, MSHA could request that Hannleb "provide review of people within the radiation oncology department." Spear Dep. 27:19-21, Apr. 27, 2017, ECF No. 34-1. Despite Hannleb's obligation to participate in the development and operation of peer review procedures, however, Spear testified that he was unfamiliar with Johnston Memorial's peer review procedures and that he did not know how his review of Kimbler related to the hospital's peer review procedures. *Id.* at 28:10-20. He never provided input for the hospital's annual review of any dosimetrist or therapist other than Kimbler. *Id.* at 30:12-19. Furthermore, he has never performed any similar audit for Johnston Memorial or MSHA. *Id.* at 34:16-18. Spear's audit of Kimbler appears to have been a one-time occurrence, initiated by a private, informal phone conversation, and potentially outside the parameters of the hospital's normal peer review procedures.

In addition, although Spear was asked by Kimbler's supervisor to perform a "chart audit," *id.* at 33:17, he did not limit his inquiry to reviewing patient charts.

Instead, he spoke with physicists employed by Hannleb, *id.* at 37:1-8, and incorporated information from these conversations into the audit. See, e.g., *id.* at 53:17-24. Spear was not asked to talk to the physicists, but he felt it was "necessary" because they were "a part of the process." *Id.* at 38:1-2. He did not, however, speak with Dr. Tisdale — also a part of the "process" as the supervising physician who approved the treatment plans — because he "wasn't asked to talk to [him]." *Id.* at 37:12-17. It is reasonable to expect that Dr. Tisdale, as the leader of the treatment team and the person who approved patient treatment plans, would have been well-placed to comment on Kimbler's abilities and whether she did, in fact, commit the errors alleged in the audit. Dr. Tisdale had also, at one point, expressed displeasure with the performance of Michelle Schwer, one of Hannleb's physicists. The fact that Spear chose not to speak with Dr. Tisdale, but did speak with Schwer and other Hannleb physicists, supports Kimbler's assertion that there is a genuine dispute as to the motivations underlying the audit.

Finally, the audit alleges that Kimbler committed "significant errors" in five of the ten patients whose charts were reviewed. *Id.* at 47:20-21. Spear conceded that Kimbler's job as dosimetrist was to develop a treatment plan "specific to [Dr. Tisdale's] prescription." *Id.* at 48:11-13. This logically leads to the conclusion — though Spear did not concede as such — that a flawed treatment plan adhering to Dr. Tisdale's instructions could as easily be the result of an error by Dr. Tisdale as

- 9 -

by Kimbler. However, in evaluating Kimbler's work, Spear did not consider whether Kimbler's "work was within that [Dr. Tisdale] told her to do," *id.* at 47:14-18, and he did not ask Dr. Tisdale whether Kimbler's work was "what he wanted." *Id.* at 48:16-17. Indeed, for at least two of the patients with "significant errors," the patient charts indicated that Dr. Tisdale had approved of the allegedly flawed treatment plan. *Id.* at 51:16-19. Moreover, in the case of at least one patient, Spear based his conclusion that Kimbler had made a "significant error" on his examination of an old version of the treatment plan. *Id.* at 53:13-21. Absent some evidence — yet to be adduced — that Kimbler developed the old plan with no direction from Dr. Tisdale or anyone else, it certainly seems unfair to state that she was solely responsible for a "significant error" in what was essentially a rough draft.

In making these observations, I do not determine the validity of the immunity and qualified privilege defenses. These examples from the deposition are merely illustrative of why I decline to grant summary judgment for the defendants at this early stage of the litigation. Based on the limited discovery conducted thus far, I believe the circumstances and defendants' conduct surrounding the audit preclude a finding at this point that there is no genuine issue as to a material fact in the case.

Under the circumstances, and for the reasons described above, I believe granting summary judgment to the defendants at this time would be premature, and will deny the motion accordingly. However, I deny the motion without prejudice.

V.

For the foregoing reasons, it is **ORDERED** that the defendants' Motion for Summary Judgment (ECF No. 7) is DENIED WITHOUT PREJUDICE.

ENTER: July 11, 2017

/s/ James P. Jones
United States District Judge